UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

UNITED STATES OF AMERICA,

-against-

SHAWN OLSZEWSKI,

Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

15cr364

MEMORANDUM & ORDER

WILLIAM H. PAULEY III, Senior United States District Judge:

Defendant Shawn Olszewski moves for a reduction of his term of imprisonment under the federal compassionate release statute, 18 U.S.C. § 3582(c)(1)(A), or furlough pursuant to 18 U.S.C. § 3622. Olszewski contends that his conditions of confinement present a heightened risk of contracting COVID-19. Olszewski also contends that the Bureau of Prisons ("BOP") policies at Metropolitan Correctional Center in New York ("MCC") limit his ability to communicate with counsel and thus, infringe his Sixth Amendment rights. He asks this Court to: (1) reduce the balance of his 48-month term of imprisonment to time served, and (2) convert the outstanding balance of his sentence to supervised release with a condition of home confinement and subject to the bail conditions in United States v. Olszewski, 17-mj-07569-UA.[1] Alternatively, Olszewski requests a furlough until the COVID-19 crisis abates. For the following reasons, Olszewski's applications are denied.

BACKGROUND

On January 22, 2016, this Court sentenced Olszewski principally to 48 months of imprisonment for violating 21 U.S.C. §§ 841(b)(1)(C) and 846. In June 2017, Olszewski was

---

[1] While the new case shows as unassigned on the district court docket, the case is assigned to the Honorable Judge John G. Koeltl.

transferred to the Bronx Residential Reentry Center ("BRRC") to complete his term of imprisonment. Instead of finishing his term at BRRC, he fled on October 4, 2017. Thereafter, a magistrate judge in this district issued a warrant for his arrest. Olszewski, 17-mj-07569-UA, ECF No. 2. In May 2019, Illinois state authorities arrested Olszewski and charged him with unlawful possession of marijuana. On August 15, 2019, Olszewski pled guilty to that charge and was sentenced to 18 months of imprisonment.

After completing his term of state imprisonment in Illinois, Olszewski was returned to this district on the warrant to face the escape charge. That criminal case was randomly assigned to another judge in this district. On the Government's consent, that judge granted Olszewski bail on a $25,000 personal recognizance bond signed by a financially responsible individual. Notably, the judge conditioned Olszewski's release on "complet[ion of] his term of imprisonment in connection with" the instant action. Olszewski, 17-mj-07569-UA, ECF No. 5, at 1.

On April 6, 2020, Olszewski submitted an administrative request to the MCC warden seeking compassionate release in light of the heightened risk of contracting COVID-19 in prison. (ECF No. 75-1, at 1.) Olszewski is 41 years old and suffers from thyroid disease, which requires daily medication. (PSR ¶¶ 59, 72.) Although the warden has yet to respond, Olszewski brings his argument to this Court.

DISCUSSION

I. Compassionate Release and the First Step Act, Generally

"A court may not modify a term of imprisonment once it has been imposed except pursuant to statute." United States v. Gotti, 2020 WL 497987, at *1 (S.D.N.Y. Jan. 15, 2020). The federal compassionate release statute, 18 U.S.C. § 3582(c)(1)(A), is one such exception to

this general rule. Indeed, § 3582(c)(1)(A) permits a court to "reduce" a defendant's sentence if it finds that "extraordinary and compelling reasons warrant such a reduction" and the "reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). Even if "extraordinary and compelling reasons" exist, the court must also weigh the factors set forth in 18 U.SC. § 3553(a) to determine whether release is warranted.

Until recently, the statute permitted a court to consider reducing a defendant's sentence only "[u]pon motion of the Director of the Bureau of Prisons." U.S.S.G. § 1B1.13. However, the First Step Act of 2018 ("First Step Act"), Pub. L. No. 115-391, 132 Stat. 5194, "created an independent avenue for defendants to seek relief from the federal courts." United States v. Ebbers, 2020 WL 91399, at *1 (S.D.N.Y. Jan. 8, 2020). Now, courts may also consider these requests "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A) (emphasis added).

II.   Application

    A.  Exhaustion

Olszewski and the Government spar over whether this Court may waive the exhaustion requirement. However, this Court need not wade into the exhaustion question because more than 30 days have lapsed since Olszewski submitted his petition to the MCC warden and the BOP has not responded. (See ECF No. 80.) Thus, this Court considers the merits of Olszewski's application.

B.  <u>Existence of "Extraordinary and Compelling Reasons" Warranting Reduction</u>

The threshold question is whether Olszewski presents "extraordinary and compelling reasons" warranting a sentence reduction. 18 U.S.C. § 3582(c)(1)(A)(i). "Congress has delegated authority to the Sentencing Commission . . . to 'describe what should be considered extraordinary and compelling reasons for sentence reduction.'" <u>Ebbers</u>, 2020 WL 91399, at *4 (quoting 28 U.S.C. § 994(t)). Here, the relevant policy statement is U.S. Sentencing Guidelines § 1B1.13 (the "Policy Statement").

Application Note 1 to the Policy Statement states, in pertinent part, that extraordinary and compelling reasons exist when:

(A) Medical Condition of the Defendant . . .

    (ii) The defendant is —

        (I) suffering from a serious physical or medical condition,

        (II) suffering from a serious functional or cognitive impairment, or

        (III) experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover. . . .

(D) Other Reasons. — As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

While the Policy Statement pre-dates the First Step Act's procedural changes, the amendments to the compassionate release statute "grant this Court the same discretion as that previously give[n] to the BOP Director, and therefore the Court may independently evaluate whether [a defendant] has raised an extraordinary and compelling reason for compassionate release" under the "catch-all" provision. <u>United States v. Lisi</u>, 2020 WL 881994, at *3

4

(S.D.N.Y. Feb. 24, 2020); see also United States v. Daugerdas, 2020 WL 2097653, at *2 (S.D.N.Y. May 1, 2020). Nonetheless, "U.S.S.G. § 1B1.13's descriptions of 'extraordinary and compelling reasons,'" Ebbers, 2020 WL 91399, at *4, provide helpful guidance for considering motions for compassionate release, Lisi, 2020 WL 881994, at *3 (citation omitted).

This Court—along with other judges in this district—has found that the increased risk of COVID-19 in prison settings coupled with a defendant's pre-existing medical conditions or advanced age, create "extraordinary and compelling reasons" under the Policy Statement. See, e.g., Daugerdas, 2020 WL 2097653, at *3 (finding extraordinary and compelling reasons under the Policy Statement for a 69-year-old defendant who "suffers from Type 2 diabetes, obesity, hypertension, and high cholesterol"); United States v. Scparta, 2020 WL 1910481, at *9 (S.D.N.Y. Apr. 20, 2020) (granting compassionate release for defendant suffering from "multiple medical issues that make him especially vulnerable to complications from COVID-19," including hypertension, sleep apnea, high blood pressure, and high cholesterol).

While this Court acknowledges the unprecedented risk COVID-19 presents to prison populations, Olszewski neither has a pre-existing medical condition that puts him at risk of serious illness from COVID-19 nor is he in an age group especially susceptible to the virus. Olszewski suffers from thyroid disease, but he does not argue that this makes him more susceptible to serious illness from COVID-19. As his counsel admitted, "I don't believe [Olszewski] has any of the known medical conditions listed on the [Center for Disease Control] website that make him particularly vulnerable." (Transcript of May 1, 2020 Argument ("Arg. Tr."), at 6.) Nor has thyroid disease been identified as an underlying condition that places

5

individuals at higher risk of COVID-19.[2]  Moreover, Olszewski is 41.  And as Olszewski concedes, his "age does not place him in the extremely vulnerable group of inmates . . . ."  (ECF No. 75-1, at 1.)  Carrying Olszewski's argument to its logical conclusion would mean every prisoner in America currently demonstrates "extraordinary and compelling reasons" under the Policy Statement.  In the absence of underlying medical conditions and advanced age, this Court does not find "extraordinary and compelling reasons" that warrant release.  See, e.g., United States v. Rodriguez, 2020 WL 1866040, at *4 (S.D.N.Y. Apr. 14, 2020) (finding that "extraordinary and compelling reasons" do not exist for a 26 year old inmate with well-managed asthma); United States v. Simmons, 2020 WL 1847863, at *1 (S.D.N.Y. Apr. 13, 2020) (finding that "extraordinary and compelling reasons" do not exist for an inmate who does not have any pre-existing health conditions because he "does not fit into any heightened risk category for COVID-19").

Olszewski additionally argues that restrictions imposed at MCC to contain the spread of COVID-19 have infringed his Sixth Amendment right to counsel.  Since Olszewski is unable to meet with his attorney in person and is only able to speak with her by phone in a limited capacity, he requests compassionate release.  In an effort to combat the spread of COVID-19, BOP has suspended legal visits.[3]

However, BOP has recognized the importance of access to legal counsel and instituted accommodations.  BOP increased phone time for each from 300 to 500 minutes per

---

[2] See Groups at Higher Risk for Severe Illness, Ctrs. for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (last updated Apr. 17, 2020).

[3] Federal Bureau of Prisons, BOP Implementing Modified Operations, available at https://www.bop.gov/coronavirus/covid19_status.jsp.

6

month and instituted video conferencing for legal visits.[4]  (Arg. Tr., at 7.)  Further, Speedy Trial Act time limitations have been suspended through June 15, 2020 and jury trials are unlikely to resume any time soon.  (See Suspension of Jury Trials as a Result of COVID-19 and the Limitation of Court Operations (Third Standing Order), 20-mc-00197.)  "Although the Court is concerned about [Olszewski's] access to counsel, it cannot find that BOP's decision to suspend all legal visits is unreasonable in light of the global pandemic and the threat it poses to inmates, residents of New York City, and the nation at large."  United States v. Adamu, 2020 WL 1821717, at *6 (S.D.N.Y. Apr. 10, 2020); see also United States v. Rico, 2020 WL 1934989, at *6 (S.D.N.Y. Apr. 21, 2020) (same).  As such, BOP's limitations on legal visits do not constitute an "extraordinary and compelling reason" making compassionate release appropriate.

Because Olszewski has failed to demonstrate "extraordinary and compelling reasons," this Court need not address whether the § 3553(a) factors militate in his favor.  Accordingly, Olszewski's application for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A) is denied.

III.   Furlough

Olszewski alternatively requests a furlough pursuant to 18 U.S.C. § 3622.  Section 3622 provides that:

> The Bureau of Prisons may release a prisoner from the place of his imprisonment for a limited period . . . if such release otherwise appears to be consistent with the public interest and if there is reasonable cause to believe that a prisoner will honor the trust to be imposed in him, by authorizing him, under prescribed conditions, to . . . visit a designated place for a period not to exceed thirty days, and then return to the same or another facility, for the purpose of . . . engaging in any other significant activity consistent with the public interest.

---

[4]     Federal Bureau of Prisons, BOP Implementing Modified Operations, available at https://www.bop.gov/coronavirus/covid19_status.jsp.

However, as the statute makes explicit, BOP—not this Court—has the authority to grant relief under § 3622.  See 18 U.S.C. § 3622; see also United States v. Roberts, 2020 WL 1700032, at *3 (S.D.N.Y. Apr. 8, 2020) (collecting cases).  While "nothing in Section 3622 prevents this Court from recommending that [the] BOP exercise its discretion to grant [Olszewski] temporary release," Roberts, 2020 WL 1700032, at *4 (quotation marks omitted), it would strain credulity to find that there is "reasonable cause to believe that [Olszewski] will honor the trust to be imposed in him," 18 U.S.C. § 3622.  Olszewski already breached that trust by fleeing from BRRC.  He did not return to the Southern District of New York under his own volition.  Rather, Illinois state authorities arrested him for new criminal conduct and then the United States Marshal Service transported him back to this district after completion of his sentence.  Accordingly, this Court declines to recommend furlough to BOP.

## CONCLUSION

For the foregoing reasons, Olszewski's motion is denied.  The Clerk of Court is directed to terminate the motion pending at ECF No. 75.

Dated: May 12, 2020
    New York, New York

SO ORDERED:

_____
WILLIAM H. PAULEY III
U.S.D.J.